UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GRADY M. KITTRELL,

              Petitioner,

vs.                                   Case No. 3:11-cv-71-J-37MCR

SECRETARY, DOC, et al.,

              Respondents.

_____

### ORDER

On January 14, 2011, pursuant to the mailbox rule, Petitioner Grady M. Kittrell filed a *pro se* Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254. The Petition challenges a 2000 state court (Columbia County) conviction for sexual battery upon a child under twelve years of age (capital) and lewd act upon a child under sixteen years of age.[1] Fourteen grounds for habeas relief are raised. Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. #28)[2] with an Appendix.[3] Petitioner filed his Reply to Respondents' Response to Order to Show Cause (Doc. #33). <u>See</u> Order to Show Cause and Notice

---

[1] The victim in this case will be referred to as "KDL." In addition, the Court will refer to other child victims by their initials.

[2] Respondents calculate the Petition is timely, Response at 49-50, and the Court accepts this calculation.

[3] The Court hereinafter refers to the Exhibits in the Appendix as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp or handwritten numbers at the bottom of each page. Otherwise, the page number on the particular document will be referenced.

to Petitioner (Doc. #7).  No evidentiary proceedings are required in this Court.

## STANDARD OF REVIEW

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption applies to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show

- 2 -

both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

## EXHAUSTION AND PROCEDURAL DEFAULT

There are prerequisites to a federal habeas review.  The Court must be mindful of the doctrine of procedural default:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012).

In addition, in addressing the question of exhaustion, the Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (citation omitted)).  To provide the State with the necessary "opportunity," **the prisoner must "fairly present" his claim in each appropriate state court** (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (emphasis added).  In <u>Baldwin</u>, the Supreme Court recognized a variety of ways a federal constitutional issue could be fairly presented to the state court: by citing the federal source of law, by citing a case deciding the claim on federal grounds, or by labeling the claim "federal." <u>Id</u>. at 32.

Again, procedural defaults may be excused under certain circumstances:  "[n]otwithstanding that a claim has been procedurally defaulted, a federal court may still consider the

claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice." Id. at 890 (citations omitted).  In order for Petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S.Ct. 2639).  Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir.), cert. denied, 528 U.S. 934 (1999).  However, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez v. Ryan, 132 S.Ct. at 1315.

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citation omitted), cert. denied, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156,

- 5 -

1171 (11th Cir. 2001) (citations omitted), <u>cert</u>. <u>denied</u>, 535 U.S.
926 (2002).

### PROCEDURAL HISTORY

Upon review of the record, the following transpired.
Petitioner was charged by an information with sexual battery upon
a child under twelve years of age and a lewd act upon a child under
sixteen years of age.  Ex. A at 1-2.  The Arrest and Booking
Report, in pertinent part, contains the following description:

> On 05/06/1999, as a follow-up investigation to
> another sexual battery case, the victim in
> this case (KDL) was interviewed at school, and
> asked if she had ever received a bad touch
> from anyone.  This question was asked by
> Gracie Regar [sic] of Children and Family
> Services.  The victim answered that she had
> been touched in a bad way.  The child (7 YOA)
> was interviewed and disclosed a history of
> sexual abuse at the hands of the Defendant.
> The victim (KDL) stated that during a time
> period from July of 1998, through the present
> she was made to touch the Defendant[']s penis
> with her hand and mouth until "wet stuff came
> out of it".  The victim described the
> Defendant performing oral sex upon her
> genitals and having to commit oral sex on the
> Defendant.  The victim relayed that she was
> told that the Defendant would kill her if she
> told anyone about it.  The victim further
> relayed that this activity occurred most all
> of the time, except during a three day period
> that the Defendant stopped, and then it began
> again.  This activity occurred up to the time
> that the Defendant was arrested with the other
> sexual battery charges and booked into the
> Columbia County Detention Center.

<u>Id</u>. at 3.

Initially, Layne Prebor, an Assistant Public Defender,
represented Petitioner.  <u>Id</u>. at 22.  The state provided a

Supplemental Answer of the State to Defendant's Demand for Discovery, listing Tami Bourdon, ARNP, Nurse Practitioner, Child Protection Team, and attaching her evaluation report. Id. at 33-38. Walter Flinn, an Assistant Public Defender, filed a Request for Additional Discovery, seeking audio taped statements and interviews. Id. at 41-42. Mr. Flinn also sought consolidation of cases for trial, noting that Petitioner had been charged with capital sexual battery upon a child under twelve years of age in two cases; the allegations in Case No. 99-481-CF (different victims) led to the investigation and charges in Case No. 99-555-CF (victim KDL); and the prosecutor would attempt to submit Williams Rule evidence. Id. at 43-44. The trial court denied the motion to consolidate. Id. at 45.

Mr. Flinn requested a mental examination by a defense expert, expressing his concern that Petitioner may be incompetent to stand trial and/or the Petitioner may have been insane at the time of the alleged offense. Id. at 46-47. This motion was granted. Id. at 48-51.

The state filed a Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts, referencing the information filed in Case No. 99-481-CF, various witnesses, uncharged criminal "child sex acts" allegedly committed by the Defendant against the child victims from both cases, and the uncharged allegation concerning a

male child, TL.[4]  Id. at 64-65.  Additionally, the state filed a Notice of Intent to Offer Hearsay Evidence.  Id. at 133-36.  Mr. Flinn filed a Motion in Limine concerning the uncharged allegations by KDL, JAK, JLH, and TL.  Ex. B at 214-16.  It also referenced the testimony of Gracie Rager, Sgt. Randy Roberts, and Tami Bourbon, and the video/deposition of KDL.  Id. at 214.

The court, addressing the Defendant's motion in limine and the state's notice of intent to introduce evidence of other crimes, wrongs, or acts (Williams Rule[5] or Similar Fact Evidence), denied the motion is limine, except with respect to the child TL.  Id. at 219.  With regard to the other victims, the court found the allegations "sufficiently similar to warrant admissibility under the more strict 'fingerprint' similarity requirement set out in Williams and its progeny."[6]  Id.  In the alternative, the court found the "similarities in the victimization" warrants admissibility within the "familial context[.]"  Id. at 220.  The court ruled the proposed evidence to be material to corroborate the allegations of KDL.  Id.  The court made the following findings of similarities: the victims were female; the victims were about the same age during the time of abuse; the abuse took place over a long

---

[4] The information in Case No. 99-481-CF is for two counts of sexual battery upon a child (victims JLH & JAK) under twelve years of age (capital).  Ex. A at 66-67.

[5] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847 (1959).

[6] Respondents provided the relevant Motion Hearing Transcript of March 9, 2000.  Ex. C.

period of time; the victims were either daughters or step-daughters at the time of the abuse; Petitioner was the only adult in the room or house during the abuse; much of the abuse occurred at night; all of the abuse occurred in the family home shared by the Petitioner and the victims; the victims were threatened with death by Petitioner if they disclosed the abuse; the victims saw or participated in the masturbation of Petitioner; and the victims were fondled on their breasts or vaginal area by Petitioner.  Id.

The state filed a Second Notice of Intent to Offer Hearsay Evidence.  Ex. B at 206-207.  The court denied the motion in limine and granted the state the right to use the testimony from Gracie Rager, Sgt. Randy Roberts, the video deposition, and the stipulated report of Ms. Bourdon, finding the similarities outweighed the dissimilarities.  Id. at 224.  The court made detailed factual findings in support of its ruling.  Id. at 224-26.

The state submitted a proposed Williams Rule jury instruction, with a memorandum of law.  Ex. A at 184-85; Ex. B at 186-202.  The court granted the state's motion for an amendment to the Standard Jury Instruction on "Williams Rule" or Similar Fact Evidence, relying on state law.

During jury selection on March 13, 2000, prospective juror Bradley Musser stated he was an engineer and electrician at the Florida Department of Transportation (FDOT).  Ex. D at 136.  When asked if he knew Jane Kittrell, Petitioner's ex-wife, Mr. Musser responded in the negative.  Id.  Mr. Flinn asked the trial court

- 9 -

for "up to six more peremptories [sic][,]" noting the decision as to whether to allow additional peremptory challenges was within the court's discretion.  _Id_. at 140.  Mr. Flinn explained that he wanted to use a peremptory challenge on Bradley Musser even though Mr. Musser said he did not know Jane Kittrell.  _Id_.  Mr. Flinn further explained that Jane Kittrell was a long-time employee of FDOT, and there was some concern that Mr. Musser may recognize her even though he did not recognize her name.  _Id_. at 141.  The state announced it would not call Jane Kittrell as a witness.  _Id_.  Mr. Flinn stated he would be calling her as a hostile witness.  _Id_. The state objected to the request for additional peremptory challenges, asserting no particular need had been demonstrated for additional challenges.  _Id_.  The court denied the Mr. Flinn's request.  _Id_.  Mr. Musser sat on the jury.  _Id_. at 141-42.  Mr. Flinn preserved his request for additional peremptory challenges. _Id_. at 153-54.

At trial, Mr. Flinn renewed his objection to the panel, and he referenced his need for additional peremptory challenges, especially with respect to Mr. Musser.  Ex. K at 6, 171, 244.  In addition, Mr. Flinn raised the matter in a Motion for New Trial. Ex. B at 266-67.  The trial court denied the Motion for New Trial. Ex. G at 5.

After a jury trial, the jury returned a guilty verdict on both counts.  Ex. B at 263.  Judgment and sentence were entered on March 17, 2000.  _Id_. at 275-78.  The trial court sentenced Petitioner to

life on count one.  Ex. M at 302.  The court also found Petitioner to be an habitual felony offender and imposed a consecutive thirty year sentence on count two.  Ex. N at 8-9.  Finally, the trial court sentenced Petitioner to 92.8 months on a violation of probation, concurrent with the sentence on count two.  Id. at 9.

Petitioner raised three grounds on direct appeal.  Ex. O.  The state answered.  Ex. P.  On May 16, 2001, the First District Court of Appeal affirmed per curiam.  Ex. Q.  The mandate issued June 1, 2001.  Ex. R at 104.

On December 3, 2001, pursuant to the mailbox rule, Petitioner filed a pro se Rule 3.850 motion in the trial court.  Id. at 1-95. The court granted Petitioner leave to file an amended Rule 3.850 motion.  Ex. S at 270.  Petitioner filed an Amended Motion.  Id. at 274-365.  The trial court entered an Order Partially Denying Motion for Postconviction Relief and Order to Show Cause on October 2, 2009.  Ex. T at 475-85.  The court denied post conviction relief on some of the grounds, but required further information on grounds one, two, six, ten, and twelve.  Id. at 484.  The court directed the state to show cause why Petitioner should not be provided an evidentiary hearing on those grounds.  Id.  Petitioner moved for the appointment of counsel, id. at 537-40, and the trial court granted the motion, appointed counsel, and set an evidentiary hearing.  Id. at 535-36.

On April 12, 2010, the trial court conducted an evidentiary hearing.  Ex. V.   Jennifer Kuyrkendall, Esquire, represented

- 11 -

Petitioner in the post conviction proceeding.  Id.  The trial court, in its order of April 23, 2010, denied post-conviction relief. Ex. U at 563-70. Petitioner appealed. Id. at 633-34. He filed a pro se appeal brief. Ex. W. The state filed a Notice that State Will Not File Answer Brief. Ex. X. The First District Court of Appeal per curiam affirmed on November 4, 2010. Ex. Y. The mandate issued on November 30, 2010. Ex. Z.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Ground One

The first ground of the Petition is: "[t]rial counsel [sic] ineffective by failure to adequately conduct pre-trial investigation and prepare Defendant to take the witness stand to establish meaningful defense evidence." Petition at 6.[7] In this ground, Petitioner raises a Sixth Amendment claim asserting he received ineffective assistance of trial counsel.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.  Recently, in a capital case, the Eleventh Circuit discussed an attorney's obligation to conduct an adequate investigation, leading to strategic choices being made after plausible options were considered:

> "In assessing the reasonableness of an attorney's investigation, ... a court must consider not only the quantum of evidence

---

[7] When referencing the Petition, the Court hereinafter refers to the Electronic Filing System designated page numbers.

- 12 -

already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." <u>Wiggins v. Smith</u>, 539 U.S. 510, 527, 123 S.Ct. 2527, 2538, 156 L.Ed.2d 471 (2003). Of course, "a complete failure to investigate may constitute deficient performance of counsel." <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 787 (11th Cir. 2003); <u>see also</u> <u>Housel v. Head</u>, 238 F.3d 1289, 1294 (11th Cir. 2001) (explaining that "a failure to investigate can be deficient performance in a capital case when counsel totally fails to inquire into the defendant's past or present behavior or life history").

That said, "no absolute duty exists to investigate particular facts or a certain line of defense." <u>Chandler</u>, 218 F.3d at 1318. Instead, a court's assessment of an attorney's investigation hinges on whether that investigation—or the decision to limit it—was reasonable. <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066. Finally, "[a] decision to limit investigation is 'accorded a strong presumption of reasonableness,'" <u>Mills v. Singletary</u>, 63 F.3d 999, 1021 (11th Cir. 1995) (internal quotation marks omitted), and "to be effective a lawyer is not required to 'pursue every path until it bears fruit or until all hope withers.'" <u>Williams v. Head</u>, 185 F.3d 1223, 1237 (11th Cir. 1999) (quoting <u>Foster v. Dugger,</u> 823 F.2d 402, 405 (11th Cir. 1987)).

Although we must assess a decision not to investigate "for reasonableness in all of the circumstances," when doing so we apply "a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 690-91, 104 S.Ct. at 2066.

<u>Puiatti v. Sec'y, Fla. Dep't of Corr.</u>, 732 F.3d 1255, 1279-80 (11th Cir. 2013).

After conducting an evidentiary hearing, the trial court denied the claim of ineffective assistance of trial counsel raised

in ground one.  Ex. U at 564-65.  Previously, the court recognized the standard set forth in <u>Strickland</u> for reviewing a claim of ineffective assistance of counsel.  Ex. T at 476-77.  In denying ground one, the court, after considerable review of the record and evidentiary proceedings, made findings of fact, and denied the claim.  Ex. U at 564-65.  In denying post conviction relief, the court said:

> The Defendant testified that his penis is deformed in two ways, to wit: his penis is noticeably scarred and he ejaculates from the base of his penis rather than the tip.  The Defendant's ex-wife, Kimberly Overby confirmed that the Defendant's penis was deformed.  She stated that the Defendant ejaculated from the base of his penis, but she said that the scar on his penis was not noticeable to her.

<u>Id</u>. at 564.

The court continued:

> The Defendant further testified that he requested that trial counsel cross examine the victim about these deformities and trial counsel refused to do so.  The Defendant stated that the victim had bathed with her older brother so she would have seen a non-deformed penis which she could compare to the Defendant's.  The Defendant maintained that he was innocent of the alleged crime and that the victim would have been unaware of his penile deformities.  Consequently, the jury would have acquitted him due to the victim's failure to identify the deformities on his penis.

<u>Id</u>.

The court discussed Mr. Flinn's testimony:

> Trial counsel, Mr. Flinn, explained that early during his preparation for this case, the Defendant had informed him about his

penile deformities and wanted Mr. Flinn to use
that information [to] cross examine the
victim.  Mr. Flinn testified that he thought
that it would be a mistake to cross examine
the child victim about the particulars of the
Defendant's penis, especially since the
primary defense was that the Defendant was
incarcerated during the period in which the
abuse allegedly took place.  Mr. Flinn also
testified that, after explaining this to the
Defendant, the Defendant agreed that it would
not be in his best interest to cross examine
the victim about his penis.  Mr. Flinn also
unequivocally testified that, in light of
having a more viable alternative defense, it
was a strategic decision to not cross examine
the victim about the Defendant's penis.

Id.

The court concluded:

Strategic decisions by trial counsel do
not constitute ineffective assistance if
alternative courses of action have been
considered and rejected and counsel's decision
was reasonable [sic] the norms of professional
conduct.  Lawrence v. State, 969 So.2d 294
(Fla. 2007)[.]  In the present case, trial
counsel had two choices: either cross examine
a child under the age of 12 about the
Defendant's penis and how the Defendant
ejaculated and possibly alienate himself or
the Defendant to the jury or not cross examine
the victim and instead rely on the strength of
other defenses.  Whether the strategy was
reasonable is a decision for the Court.  See
Casey v. State, 969 So.2d 1055 (Fla. 4th DCA
2007).  The undersigned judge has presided
over multiple trials involving the sexual
abuse of minors.  During those trials, the
undersigned has witnessed jurors become upset
when counsel would interrogate child victims
about the particulars of the sexual acts or
organs of an accused.  In light of this, trial
counsel's fear that cross examination of the
victim could have been counterproductive to
the Defendant was well founded.  Therefore,
his strategic decision to not cross examine

- 15 -

>       the victim was reasonable.  The Defendant is
>       not entitled to relief on this claim.  See
>       <u>Lawrence</u>.

Ex. U at 564-65.

The trial court concluded that defense counsel was not ineffective for the reasons stated in its order. The First District Court of Appeal affirmed. Ex. Y.

With regard to the cross examination of the victim, defense counsel testified at the evidentiary hearing that he and his client discussed Petitioner's deformity and the "defense of the ejection downward[.]" Ex. V at 59. After this discussion, with the agreement of Petitioner, counsel made the strategic decision not "to hammer the victim" to prevent the jury from "hating our guts." <u>Id</u>. Instead, the focus of the defense was that "it never happened[.]" <u>Id</u>. In sum, as part of his trial strategy, trial counsel decided not to "attack" the child victim. <u>Id</u>.

Petitioner also contends counsel was ineffective for failure to prepare him to take the witness stand. Mr. Flinn testified that he spoke with Petitioner about his right to testify versus electing not to testify. <u>Id</u>. at 66. Mr. Flinn also said they went over Petitioner's testimony prior to trial. <u>Id</u>. In addition, they "practiced his [Petitioner's] testimony." <u>Id</u>. at 67. Mr. Flinn explained:

>       His theory of defense required him to
>       testify and he wanted to testify. He always
>       wanted to testify and I would have gone over
>       with him impeachment for felony convictions
>       and I would have to refresh my memory of how

- 16 -

> the prosecutor, impeachment of prior felonies,
> or maybe didn't in this case, I'm not sure
> because I know in one of the trials we brought
> out about being on probation and being
> incarcerated during a time period he was
> accused of molesting his children.

Id. at 77.

Upon review, there was a wealth of testimony provided by defense counsel which supports the trial court's decision to deny post conviction relief based on a claim of counsel's ineffectiveness.  In light of all the circumstances, defense counsel's performance was not outside the wide range of professional competence.  Indeed, this Court concludes that the adjudication of the trial court was not based on an unreasonable determination of the facts.  Furthermore, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland.  Thus, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.  See Response at 56-57.

With respect to ground one, Petitioner is not entitled to habeas relief on the claim of ineffective assistance of trial counsel.  Petitioner raised the issue in his Rule 3.850 motion, the trial court denied the motion, and the appellate court affirmed.

Deference under AEDPA should be given to the state courts' decisions.

## Ground Two

In the second ground, Petitioner claims: "[t]rial counsel was ineffective by failure to request appointment of an expert in child sexual abuse to examine the victim to present evidence of a viable defense." Petition at 7. In essence, Petitioner claims counsel violated the Sixth Amendment right to effective assistance of trial counsel by failing to obtain an expert to examine the victim and provide testimony that there was no damage to the victim's hymen or other organs. The trial court described Petitioner's claim:

> The Defendant testified that trial counsel should have called an expert witness to examine the victim. The expert would have been able to testify that there was no damage to the victim's hymen or other organs. The expert would have been able to say that the lack of injuries may indicate that the victim was not sexually abused. On cross examination, the Defendant conceded that the expert called by the State explained to the trial jury that there was no physical evidence of sexual abuse. The Defendant also conceded that, during trial counsel's cross examination, the State's expert agreed that the lack of injury is also consistent with no abuse having taken place. At the hearing the Defendant also raised, for the first time, that that [sic] trial counsel should have hired a mental health expert to evaluate the victim to determine if she was exhibiting psychological symptoms consistent with having been sexually abused.

Ex. U at 565.

The court, in making its decision, relied on Mr. Flinn's testimony:

> Mr. Flinn explained that there was no need to hire an expert as he was able to elicit all the information he needed to mount a defense from the cross examination of the State's expert.  Through cross examination, trial counsel was able to show that there were no injuries to the sexual organs of the victim and that the lack of injuries was consistent with the defense theory that the victim had not been abused.  Mr. Flinn opined that calling an expert to reiterate what had already been established by the State's witness would have been unnecessarily cumulative.  Trial counsel further stated that during his lengthy tenure as a defense attorney he had never seen another attorney call an expert in similar circumstances.

Id.

The court found:

> Per Lawrence, this Court finds that the decision to not call a defense expert to testify that the lack of physical injuries was consistent with not being abused was sound trial strategy.  Hearing cumulative evidence would not have advanced the Defendant's case and would have been a waste of the juries' time.  This Court finds that the Defendant was not ineffective for failing to call an expert to testify regarding the victim's lack of injury.

Ex. U at 565.

Upon review, at the evidentiary hearing on the post conviction motion, counsel explained:

> Had there been an injury, then that would be a proper time to have an expert to counter to say that injury came from a skiing accident or from a car door as opposed to sexual penetration.  So in the Third Circuit I've never seen an expert called where there's been

- 19 -

> no physical evidence of molestation on a
> child, so I would never have called an expert
> in that case.

Ex. V at 60.

In this instance, the state's expert Tami Bourdon, an Advanced Registered Nurse Practitioner, testified at trial that she performed an examination of KDL on July 8, 1999, in the examination room of the Child Protection Team. Ex. L at 159. Ms. Bourdon did not find any "physical finding." Id. at 166. Also, the test results for gonorrhea and chlamydia were negative. Id. She did explain, however, that "[f]orced masturbation, forced fellatio" would not leave an injury to the hymenal or genital area. Id.

On cross examination, Mr. Flinn inquired as to the meaning of her lack of any physical finding. Id. at 167. Ms. Bourdon explained that her examination neither confirmed nor negated the history of sexual abuse because many types of sexual abuse do not leave physical findings. Id. She reiterated on cross that all "cultures were negative." Id. at 168.

Defense counsel was able, on cross examination of the state's expert, to emphasize the fact that there were no physical findings of sexual abuse and all test results were negative. The fact that the state's own expert witness confirmed these facts certainly reflected favorably on the defense. Counsel's strategic decision not to call an expert to reiterate these findings did not amount to deficient performance. This was sound trial strategy.

Additionally, Petitioner was not prejudiced by counsel's decision to rely on his cross examination of the state's expert.

Based on all of the above, Petitioner's ineffectiveness claim raised in ground two is without merit since he has neither shown deficient performance nor resulting prejudice. See Response at 63-64. The decisions of the state courts are entitled to deference under AEDPA. The decisions involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground two, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

With respect to Petitioner's attempt to expand this ground to include a claim that trial counsel should have hired a mental health expert to examine the victim, the trial court found that this claim was untimely raised and thus procedurally barred. Ex. U at 565. The First District Court of Appeal affirmed the trial court's decision. Ex. Y.

Petitioner has failed to show cause for his failure to raise the claim or that prejudice would result if the Court does not reach the merits of the claim. See Response at 59-60. A fundamental miscarriage of justice will not result if this part of

ground two is not addressed on the merits.  Therefore, the Court finds that this part of ground two is procedurally defaulted.  It will not be addressed on the merits.

### Ground Three

In his third ground, Petitioner raises another claim of ineffective assistance of counsel.  Petition at 10.  He alleges that counsel failed to "adequately object or otherwise preclude violations of William's [sic] Rule Evidence pursuant to alleged prior 'bad acts[.]'"  Id.  Petitioner raised this claim in his post conviction motion, and the trial court summarily denied the claim. First, the court stated that Petitioner was attempting to relitigate an issue that was denied on direct appeal.  Ex. T at 477-78.  Alternatively, the court recognized that Petitioner's counsel objected to the state's attempt to introduce Williams Rule evidence.  Id. at 478.  Indeed, the record shows this matter was given full consideration;  the trial court addressed Petitioner's Motion in Limine, the state's Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts, and the state's Notices of Intent to Offer Hearsay Evidence.  As noted previously, after a hearing, the court made very specific findings in support of its rulings.  See Ex. C, Motion Hearing Transcript; Ex. B at 219-20, 224-26.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.  In fact, the record reflects that the First

District Court of Appeal specifically rejected Petitioner's claim that the trial court erred in allowing "similar fact evidence." Ex. O at 19-21.  <u>See</u> Ex. Q.  In addition, when the claim was raised in terms of an ineffective assistance of counsel claim based on counsel's failure to preclude the evidence, the trial court rejected the claim, and the appellate court affirmed.

Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the <u>Strickland</u> ineffectiveness claim.  Indeed, the decision rejecting the claim of ineffective assistance of trial counsel is entitled to deference under AEDPA.  The adjudication of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground three of the Petition, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**Ground Four**

In his fourth ground, Petitioner claims that trial counsel failed to request jury instructions on necessarily included offenses.  Petition at 11.  The trial court denied this ground finding the argument that the jury could have used its pardon power

- 23 -

to find a defendant guilty of lesser offenses has been deemed to be insufficient to satisfy the prejudice prong of <u>Strickland</u>.  Ex. T at 478.  The appellate court affirmed this decision.

Upon review, Petitioner's claim rests on the speculation that had lesser offenses on the verdict form been given, such as attempted lewd act upon a child under the age of sixteen or assault and aggravated assault or battery, the jury would have found him guilty of the lesser offenses.  The record reflects the following. The court instructed the jury on sexual battery on a child under twelve by one eighteen or older, and the lesser offenses of attempt to commit sexual battery and battery.[8]  Ex. M at 283.  Therefore, the jury was charged on attempt on count one.  Also, the jury was charged on the lesser offense of battery.  <u>Id</u>.  With respect to count two, the jury was charged with lewd act upon a child, and with the lesser offenses of unnatural and lascivious act, battery, and assault.  <u>Id</u>.  Thus, the jury was given the opportunity to return a verdict on battery or assault on the second count.  The jury, however, was not given the opportunity to return a verdict on attempt on the second count.  Ex. B at 263.

---

[8] The trial court mistakenly stated that the jury was not instructed on the lesser included offense of attempted sexual battery.  Ex. T at 478.  The record shows otherwise.  Ex. M at 283-85.  This simple error, however, does not prevent this Court from giving due deference to the trial court's decision on the claim of ineffective assistance of trial counsel as it was based on Petitioner's failure to satisfy the prejudice prong of <u>Strickland</u>.

The record, however, does not establish "a reasonable probability that the outcome of the proceeding would have been different," had counsel raised an objection to the jury instructions and the verdict form.[9]  See Argo v. Secretary, No. 8:05-cv-1964-T-33EAJ, 2010 WL 3222064, at *17 (M.D. Fla. Aug. 16, 2010) (not reported in F.Supp.2d) (finding no reasonable probability that the outcome of the case would have been different had counsel objected to the jury instruction and verdict form), aff'd by 465 F. App'x 871 (11th Cir. 2012) (per curiam).

Petitioner argues that the jury could have exercised its pardon power and found him guilty of lesser included offenses.  Of import, "the mere possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland."  Dayes v. McNeil, No. 08-22711-Civ, 2009 WL 6415371, at *9 (S.D. Fla. Aug. 26, 2009), report and recommendation adopted by 2010 WL 1796812 (S.D. Fla. May 3, 2010).  See Bell v. McNeil, 353 F. App'x 281, 286 (11th Cir. 2009) (per curiam) (finding petitioner failed to show that the jury probably would have convicted him of a lesser offense, and the state court reasonably concluded that petitioner failed to show a reasonable probability of a different outcome).  Petitioner has failed to satisfy the second prong of the two-part Strickland test; therefore, since he has failed to satisfy the

---

[9] Here, the jury certainly had the opportunity to find Petitioner guilty of lesser offenses of attempted sexual battery or battery on count one, and an unnatural and lascivious act, battery, or assault on count two.

prejudice component, he is not entitled to habeas relief on this ground.

The decisions of the state courts are entitled to deference under AEDPA. They involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground four of the Petition, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## Ground Five

In his fifth ground, Petitioner claims his life sentence is unconstitutional in that sexual battery is not a "capital" offense, and therefore, any conviction under the sexual battery statute is unconstitutional. Petition at 14. The trial court rejected this post conviction claim. The court explained its reasoning:

> Ground five (5) alleges that since the Florida Supreme Court held the death penalty to be unconstitutional in capital sexual battery cases in Buford v. State, 403 So.3d 943 (Fla. 1981), sexual battery is no longer a "capital offense." The Defendant lists how capital sexual battery is treated as a capital offense in some respects (ie: mandatory punishment of life imprisonment), but not in others (ie: not entitled to a twelve person jury). Because of these differences, the Defendant believes that the statute is

unconstitutional and his conviction should be vacated.

Post-<u>Buford</u> the term "capital," when referring to crimes other than first degree murder, is confusing.  In <u>Buford</u> the Florida Supreme Court held that "capital sexual battery" was no longer a "capital" offense in that the death penalty could no longer be applied in such cases.  Thereafter, "capital" sexual battery was still a crime, just not one punishable by death.  In <u>Batie v. State</u>, 534 So.2d 694 (Fla. 1988) the Florida Supreme Court clarified the legislature's continuing use of the word "capital" in sexual battery cases, stating "[n]otwithstanding our determination that the sexual battery proscribed by subsection 794.011(2) is no longer a capital crime. . . we recogniz[e] the legislature's definition of it as "capital" in determining legislative intent for other consequences of this crime." <u>Id</u>. at 694.  In other words, even though capital sexual battery is no longer punishable by death, the legislature has retained use of the word "capital" for reasons not related to imposition of the death penalty.  Therefore, there are two valid uses of the word "capital" in the State of Florida, to wit: the legislative use, which is not wholly used in conjunction with the death penalty, versus the case law use, which is solely used in relation to the death penalty.  See <u>Huffman v. State</u>,813 So.2d 10 (Fla. 2000) ("[E]ven if a felony is classified in the Florida Statutes as a capital offense, it is not 'capital' under case law unless it is subject to the death penalty.")

Ex. T at 479.

The court concluded:

The Defendant's motion seeks to exploit this confusion claiming that since "capital sexual battery" is not a "capital" offense, then he cannot be given the "capital" sentence of life imprisonment.  His argument is without merit.  Capital sexual battery is a capital

> offense for purposes of the legislature's
> sentencing schema.   Accordingly, he may be
> sentenced to life in prison.   See <u>Gibson v.
> State</u>, 721 So.2d 363 (Fla. 2d DCA 1998).

Ex. T at 479.

Respondents contend, and this Court agrees, that this ground, claiming an unconstitutional sentence, simply involves a state court's interpretation and application of Florida law. <u>See</u> Response at 77-78.   Petitioner has presented a state law claim, not a claim of constitutional dimension.   Since ground five presents an issue of state law that is not cognizable in this proceeding, this ground cannot provide a basis for habeas corpus relief.   Thus, Petitioner is not entitled to relief on ground five.

In the alternative, to the extent Petitioner raised and exhausted a claim of constitutional dimension, the decisions of the state courts are entitled to AEDPA deference.   The adjudication of the state trial and appellate courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.   Therefore, Petitioner is not entitled to relief on ground five because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   <u>See</u> Response at 77-78.

## Ground Six

In his sixth ground, Petitioner claims that his counsel was ineffective for failure to investigate and call as witnesses his ex-wife, Jane Kittrell, and MR, a five-year-old child.  Petition at 15-16.  Respondents rely on the decision of the trial court in denying this claim.  Response at 80-84.  With respect to Petitioner's claim that counsel should have called Jane Kittrell as a witness at trial, the trial court held:

> The Defendant testified that trial counsel should have called the Defendant's other ex-wife, Jane Kittrell and M.R. to testify.  The Defendant alleged that Ms. Kittrell would have corroborated that the Defendant's penis was deformed and the jury would have been able to see the amount of hostility she had for the Defendant.  On cross examination, the Defendant conceded that Ms. Kittrell would have testified that the Defendant was a womanizer and the police had been called to their residence to break up domestic disputes.

> When asked about why he did not call Ms. Kittrell to testify, Mr. Flinn explained that Ms. Kittrell would have been a "minefield" and he could not control her testimony.  Mr. Flinn disclosed that, while Jane Kittrell and the Defendant were married, the Defendant started a sexual relationship with Ms. Overby.  During the separation process, the Defendant moved Ms. Overby into a mobile home within 100 yards of the marital home that the Defendant had shared with Ms. Jane Kittrell.  Mr. Flinn also stated that the Defendant had been accused of molesting Ms. Kittrell's child while they were married.  Because of the resulting animosity between Ms. Kittrell and the Defendant, Mr. Flinn was convinced that Ms. Kittrell would have done or said anything to help convict the Defendant.  Mr. Flinn testified that he shared his opinion with the Defendant and the Defendant agreed with his decision to not call

- 29 -

> her as a witness.  Furthermore, as the penis
> deformity defense had been rejected by both
> trial counsel and the Defendant, there was no
> reason to call her to corroborate the Defendant
> being deformed.

Ex. U at 566.

After providing this summary of counsel's testimony, the trial court denied post conviction relief finding: "[b]ased upon the factors articulated in <u>Lawrence</u>,[10] this Court finds that trial counsel's decision to not call Ms. Jane Kittrell as a witness was reasonable." Ex. U at 566.  Again, the trial court found counsel made a reasonable strategic decision, well within the bounds of professional conduct.

In addition, the trial court also addressed the question as to whether counsel was deficient for failing to call MR as a witness. The court first discussed the nature of MR's proposed testimony:

> The other witness that the Defendant
> wanted called was M.R., who was five years old
> at the time of trial.  The Defendant stated
> that M.R. and the victim shared a bedroom and
> M.R. never witnessed the Defendant molesting
> the victim.  Further, the Defendant alleges
> that M.R. could testify that the victim had
> lied in the past.  On cross examination the
> Defendant agreed that M.R. and the victim had
> lied in the past when the two would get in
> trouble.

<u>Id</u>. at 566.

---

[10] <u>Lawrence v. State</u>, 969 So.2d 294 (Fla. 2007) (per curiam).

The trial court credited defense counsel's testimony with respect to his explanation as to why he would not have called this five year old child to testify at trial:

> Trial counsel testified that he was not aware that the Defendant wanted to call M.R. Initially, trial counsel warned the Court that he would have been hesitant to call M.R. to testify as he is reluctant to call small children as witnesses as they can be unpredictable. Mr. Flinn further testified that he subpoenas all witnesses that either he or the Defendant may want to call to testify. A review of the Court file reveals that no subpoena was ever issued to M.R. for either deposition or trial. Mr. Flinn also stated that he currently does not believe that M.R.'s testimony would have been admissible at the Defendant's trial, although he cannot recall if he researched the issue at the time of trial.

Id.

The trial court concluded that even if the child had been called to testify, her proposed testimony would have been inadmissible for various reasons. The court explained:

> M.R.'s alleged testimony that the Defendant never inappropriately touched her is inadmissible character evidence. See Florida Statute § 90.404. Assuming that testimony regarding the victim's truthfulness was admissible, the only method of proving the victim's truthfulness or lack thereof is through testimony about the victim's reputation. See Florida Statute § 90.405. There was no testimony that M.R. was aware of the victim's reputation in the community, which is a prerequisite for admissibility. See C. Ehrhardt, Florida Evidence §90.405 (2007 edition). The evidentiary hearing revealed that 5 year old M.R. only knew of specific instances of the victim having lied when she had been in trouble. Specific instances of conduct are inadmissible to prove reputation.

- 31 -

> See <u>Hoffman v. State</u>, 708 So.2d 962 (Fla. 5th DCA 1998); See C. Ehrhardt, Florida Evidence §90.405 (2007 edition), page 285 ("Since reputation is the product of what is generally discussed in the community, the witness's personal experiences and observation are excluded.").
>
> As M.R. could not have testified, trial counsel was not ineffective for failing to call her as a witness.

Ex. U at 567.

Mr. Flinn testified at the evidentiary hearing that Jane Kittrell would have been a terrible witness, and he remembered having a conversation with Petitioner in which counsel advised that Jane Kittrell would "hammer him[,]" her testimony would be more negative than positive, and any benefit from her testimony would be minimal. Ex. V at 62. Furthermore, Petitioner and counsel had already agreed "not to use the now termed penis defense."[11] <u>Id</u>. In response to the question as to whether MR should have been called to testify at trial, Mr. Flinn attested that he believes it is "very dangerous" to call young children in sex cases. <u>Id</u>. at 63. Also, Mr. Flinn opined that MR's testimony would have been inadmissible even if he had tried to call her as a witness at trial. <u>Id</u>. at 64.

This Court finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124

---

[11] Mr. Flinn is referring to Petitioner's assertion that his penis was scarred and deformed, and Jane Kittrell and other witnesses could have testified about his deformity.

S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Therefore, Petitioner is not entitled to habeas corpus relief on ground six of the Petition.

Deference, under AEDPA, should be given to the state courts' decisions. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Based on the above, Petitioner is not entitled to relief on ground six of the Petition, the claim of ineffective assistance of trial counsel.

### Ground Seven

In ground seven, Petitioner claims the prosecution failed to prove penile/vaginal contact, rendering his capital sexual battery conviction erroneous and reversible. Petition at 18. This claim is without merit. See Roberts v. State, 39 So.3d 372, 373 (Fla. 1st DCA 2010) (sexual battery committed by oral penetration); Begley v. State, 483 So.2d 70, 72 (Fla. 4th DCA 1986) (sexual battery by fellatio). The trial court rejected this claim noting that "[t]he Defendant concedes that the State introduced evidence that the Defendant inserted his penis into the oral cavity (mouth) of the victim." Ex. T at 480. Upon review of the record, at trial KDL testified there was penetration of her mouth with Petitioner's sex organ. Ex. K at 30-32. See Ex. A at 1, Information.

Petitioner is not entitled to relief on ground seven of the Petition.   Deference under AEDPA should be given to the state court's decision, which was affirmed on appeal.   The adjudication of this claim is not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts. Ground seven is due to be denied.

### Ground Eight

In his eighth ground, Petitioner claims he was denied due process of law when he was sentenced to life imprisonment in violation of the state's prohibition against indefinite imprisonment.   Petition at 19.   The trial court summarily denied this claim as follows:

> The Defendant argues that life in prison is an indefinite sentence.   Such a sentence, according to the Defendant, violates Florida Constitutions' [sic] prohibition on indefinite sentences.   See *Article I § 17, Florida Constitution*.   The Florida Supreme Court directly rejected the Defendant's claim in Ratliff v. State, 914 so.2d 948 (Fla. 2005) holding, "the fact that the judicial system has no way of knowing how long the defendant will live and therefore cannot know how long the defendant will be incarcerated does not render a life sentence unconstitutionally indefinite."

Ex. T at 480-81.

First, this ground is not cognizable in a federal habeas corpus proceeding as it involves a state court interpretation and application of Florida law.   Simply, it is not a claim of constitutional dimension.   As a result, ground eight should be dismissed as it cannot provide a basis for habeas corpus relief.

- 34 -

Even though Petitioner has couched his claim in terms of denial of due process of law, the claim is not of constitutional magnitude. "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (per curiam) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)). The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992).

Petitioner has not shown a breach of a federal constitutional mandate. Of course, this issue is one of state law, and this Court will not act as a super appellate court reviewing state court sentencing proceedings. Estelle v. McGuire, 502 U.S. 62, 67 (1991). Thus, ground eight presents an issue of state law that is not cognizable in this proceeding. This claim cannot provide a basis for habeas corpus relief and is due to be denied.

In the alternative, to the extent Petitioner raised a federal constitutional claim in the state courts, AEDPA deference is due to the state courts' decisions. Petitioner is not entitled to relief on ground eight.

**Ground Nine**

In his ninth ground, Petitioner claims his counsel's performance was deficient for failure to adequately argue a motion

- 35 -

for consolidation or challenge the court's denial of the motion for consolidation.    Petition   at   22.    The   trial   court   succinctly described Petitioner's claim:

> The Defendant alleges that trial counsel
> erred in failing to consolidate 1999-481-CF and
> 1999-555-CF (the instant case).  In this case,
> trial counsel's failure to consolidate cases
> resulted in the Defendant having more criminal
> convictions at trial, allowed a law enforcement
> officer to read the testimony of the victim in
> 1999-481-CF to the jurors and allowed otherwise
> inadmissible hearsay into the trial.

Ex. T at 481.

The   trial   court,   in   denying   this   claim   of   ineffective assistance of counsel, first noted that trial counsel did move the court  to  consolidate  the  cases.   Id. at 481.   Additionally, the court stated that any subsequent motion or request to consolidate would have been denied as well.  Id.  The court explained that the events occurred more than twenty years apart, with separate victims and  incidents.   Id.   Since  the  alleged  acts  were  separate  and distinct,   the   court   concluded   they   were   not   subject   to consolidation.  Id.

The  record  shows  that  Mr.  Flinn  moved  for  consolidation, referencing  the  fact  that  both  cases  concerned  allegations  of capital sexual battery upon a child under twelve years of age, the investigation  into  the  older  case  led  to  the  investigation  and charges in the instant case, and counsel expected the prosecutor to attempt to bring in evidence of other crimes, wrongs, or acts in the

- 36 -

instant case.  Ex. A at 43.  The trial court denied the motion.  Id. at 45.

By various other means, Mr. Flinn tried to limit the amount of prejudicial information in Case No. 99-481-CF from being introduced in Case No. 99-555-CF.  He filed a Motion in Limine asserting that the information from the other case would deprive Petitioner of a fair trial.  Ex. B at 214.  Mr. Flinn objected to the Williams Rule evidence being used at trial, and he vigorously argued that it would overwhelm the trial evidence coming from the victim.  Ex. C at 66. This Court recognizes that counsel attempted to prevent the introduction of the Williams Rule evidence, and he also attempted to limit the prejudicial impact of that evidence.

Petitioner has not established the first prong of Strickland, that trial counsel's performance was deficient.  The adjudication of this claim of ineffective assistance of counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Nor has Petitioner shown prejudice, as required by the second prong of Strickland.  See Response at 95, noting that the allegations of prejudice relate to a different case (Case no. 99-481-CF), not the instant case; Ex. A at 66.  Therefore, ground nine of the Petition does not warrant habeas relief.

**Ground Ten**

The tenth ground is a claim of ineffective assistance of trial counsel based on counsel's failure to object when there was a failure to administer the jury oath prior to voir dire. Petition at 23. Petitioner asserted this claim in his post conviction motion; however, at the evidentiary hearing, Petitioner withdrew this claim stating he recalled the jury being sworn for voir dire. Ex. V at 15. At that point, Petitioner, through counsel, withdrew his claim of ineffective assistance of counsel raised in ground ten. Id. at 16.

Ground ten was not exhausted in the state court system. Therefore, this ground is procedurally barred from federal habeas review. See Response at 96-97. Petitioner has not shown cause and prejudice or that a fundamental miscarriage of justice will result if the court does not reach the claim on its merits. Petitioner is not entitled to habeas relief on ground ten of the Petition.

**Ground Eleven**

Petitioner raises another claim of ineffective assistance of counsel in his eleventh ground. He claims counsel was ineffective for failure to adequately object and argue for additional peremptory challenges. Petition at 26. This ground is based on Petitioner's assertion that Bradley Musser should have been stricken from the jury panel. Ex. T at 482.

The trial court denied this ground noting that counsel asked the court for additional peremptory strikes in order to strike juror Musser. Id. The court further explained its denial of this ground:

> Even if counsel had failed to ask for additional peremptory strikes, the Defendant has failed in his burden to show that juror Messer [sic] was *actually* biased. In Carratelli v. State, 961 So.2d 312 (Fla. 2007) the Florida Supreme Court held that in any postconviction motion alleging failure to remove a juror, the burden is on the Defendant to show that the juror is *actually* biased. . . . In the instant case, the Defendant merely alleges that juror Musser worked at the Department of Transportation with his ex-wife, Ms. Kittrell, who was the mother of the victim in 1999-481-CF. The juror denied knowing Ms. Kittrell. Under Carratelli the Defendant has wholly failed to allege *actual* bias.

Ex. T at 482-83. The appellate court affirmed this decision.

The record shows the following. During voir dire, when asked if he knew Jane Kittrell, Mr. Musser unequivocally denied knowing her. Ex. D at 136-37. Additionally, the record shows that Mr. Flinn asked for additionally peremptory challenges, mentioning his concern about Mr. Musser. Ex. D at 140-41. Mr. Flinn preserved his objection and raised the issue in a Motion for New Trial. Ex. D at 153-54; Ex. K at 6, 171, 244; Ex. B at 266-67. Thus, counsel made every effort to obtain an additional peremptory challenge; however, the trial court denied his request. Counsel's performance was not deficient in this regard. Moreover, the prejudice prong of Strickland has not been met. Indeed, Petitioner has failed to

present evidence showing that Mr. Musser recognized Jane Kittrell at trial or that Mr. Musser was actually biased.

Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice. Petitioner is not entitled to relief on ground eleven of the Petition, the claim of ineffective assistance of trial counsel. See Response at 100-103. Deference, under AEDPA, should be given to the state court's decision. Petitioner raised the issue in his Rule 3.850 motion, the trial court denied the motion, and the appellate court affirmed. The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

### Ground Twelve

In ground twelve, Petitioner claim his counsel was ineffective for failure to object and move for a mistrial based on the revelation of his incarcerated status at trial. Petition at 27. Petitioner raised this ground in his post conviction motion. After considering the matter at the evidentiary hearing, the trial court denied the claim. Ex. U at 567-69.

The trial record reveals the following. Petitioner elected to take the stand at trial, knowing that the fact that he was a convicted felon and the number of his prior convictions would be admissible. Mr. Flinn asked Petitioner his address, and he said Hopeful Circle. Ex. L at 198-99. Mr. Flinn asked about the birth of Petitioner's twins, and if Petitioner was still living at that

same address.  Id. at 201.  Petitioner responded "no."  He then
added: "I was incarcerated."  Id.  Counsel then asked what
Petitioner was incarcerated for, and he responded "DUI
manslaughter."  Id.  Counsel asked how many years Petitioner spent
in prison, and he responded three years.  Id.  In his testimony,
Petitioner revealed that he was arrested and placed in jail for a
charge of convicted felon with a firearm.  Id. at 212-13.  Counsel
asked how long Petitioner was confined in jail, and Petitioner
responded one night.  Id. at 214.  Counsel then asked if Petitioner
was placed on probation, and he responded he received two years of
house arrest and three years probation, but actually served ten
months on house arrest and was then placed on probation until he was
arrested for the instant charges.  Id.

The trial court, in denying this ground of ineffective
assistance of counsel, said:

> The Defendant testified that trial counsel
> knowingly asked the Defendant to reveal to the
> jury that he had previously been incarcerated
> and that he was incarcerated at the time of his
> trial.  The Defendant agreed that trial counsel
> had reviewed his case with him, though not to
> the extent he would have liked.  The Defendant
> also stated that trial counsel failed to
> prepare him to testify, but that they did go
> over some of the questions that counsel would
> ask the Defendant during pretrial meetings.
> During cross examination, the Defendant
> conceded that trial counsel, during direct
> examination of the Defendant, had not directly
> asked the Defendant about his incarceration.
> Instead, the Defendant volunteered the
> information, assuming that trial counsel was
> actually asking about the Defendant's past
> prison history.  The Defendant also stated

> during cross examination that Mr. Flinn had
> warned him about the perils of testifying,
> including the possibility of revealing to the
> jury the Defendant's prior convictions.

Ex. U at 567.

Next, the trial court referenced defense counsel's testimony
from the evidentiary hearing:

> Mr. Flinn testified that, although he did
> not ask directly about the Defendant's prison
> history during direct examination, he did
> intend to elicit that information. Mr. Flinn
> stated that he and the Defendant practiced the
> Defendant's direct examination multiple times,
> including in the courtroom. When asked why he
> would illicit the Defendant's prison history,
> Mr. Flinn responded that part of the defense to
> the charges was that the Defendant was
> incarcerated during a period of time in which
> the alleged abuse took place.
>
> Initially, this Court notes that the
> statements regarding Defendant's being
> incarcerated were exclusively volunteered by
> the Defendant and not the result of any
> questioning by trial counsel.

Id. at 567-68.

The trial court concluded:

> As the transcript plainly reveals, the
> Defendant via his non-responsive answers to
> trial counsel, volunteered to the jury that he
> had been previously incarcerated and had been
> incarcerated for the charges for which he was
> being tried. It was the Defendant, not trial
> counsel, who revealed to the jury that he had
> been imprisoned. The record refutes the
> Defendant's allegation, which precludes
> postconviction relief. See Fla. R. Crim. Pro.
> 3.850(d).
>
> Assuming, arguendo, that trial counsel did
> elicit information regarding prior
> incarceration, this Court finds that it was a

- 42 -

> reasonable strategic decision under <u>Lawrence</u>.
> By setting forth the timeline of incarceration
> and being on probation, it allowed counsel to
> argue to the jury that the Defendant could not
> have committed the alleged crimes as he was
> either in prison or under supervision by the
> Department of Corrections at the time of the
> offenses.  In light of the damaging testimony
> of the victim and *William's* [sic] *Rule*
> witnesses, this defense was reasonable.

<u>Id</u>. at 569.

During the evidentiary hearing, Mr. Flinn explained that part of Petitioner's theory of his defense was "lack of opportunity." Ex. V at 68.  In particular, this lack of opportunity related to the Williams Rule witnesses.  <u>Id</u>.  The defense wanted to show that these witnesses were lying because Petitioner was in prison during the relevant period; therefore, the defense hoped to show the offenses did not happen and were merely fabrications of the witnesses.  <u>Id</u>. The specific length of time Petitioner was incarcerated was brought out to show he was "unavailable to molest anyone that he was accused of molesting during that time period."  <u>Id</u>. at 69.  In sum, part of Petitioner's theory of defense was that he was incarcerated or on probation during the relevant time periods, and he could not have molested anyone while incarcerated or under supervision or house arrest.  <u>Id</u>. at 70-71.

Mr. Flinn summarized Petitioner's theory of defense and why Petitioner elected to testify at trial:

> His theory of defense required him to
> testify and he wanted to testify.  He always
> wanted to testify and I would have gone over
> with him impeachment for felony convictions and

> I would have to refresh my memory of how the prosecutor, impeachment of prior felonies, or maybe [he] didn't in this case, I'm not sure because I know in one of the trials we brought out about being on probation and being incarcerated during a time period he was accused of molesting his children.

Id. at 77.

Finally, Mr. Flinn explained the nature of the defense at trial:

> During his trial he testified about being incarcerated and being on probation as part of his defense of, it wasn't me and, look, they're lying because they said I did [it] during these years and I was incarcerated or on probation. And if I was on probation being watched, how did it not come out?  That was his theory of – as part of his theory of defense.  And, like I said, that's not a novel defense.  It was his theory.  There's nothing unethical about that, so it was pursued.

Id. at 78.

Trial counsel's performance was not outside the wide range of professional competence.  Petitioner knew if he took the stand he was facing impeachment for prior felony convictions.  He decided to take the stand and testify to counter the victim's testimony and that of the Williams Rule witnesses.  Indeed, part of the defense strategy was to present evidence of Petitioner's incarceration or probation to convince the jury that Petitioner did not have the opportunity to commit some of the alleged offenses.  Petitioner has not shown deficient performance on the part of defense counsel.  Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the

<u>Strickland</u> ineffectiveness claim.  The decision was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts.  Thus, Petitioner is not entitled to habeas corpus relief on ground twelve.

**Ground Thirteen**

In ground thirteen, Petitioner claims his counsel was ineffective for failure to investigate, develop and put forth available evidence to impeach the witness.  Petition at 30.  In this ground, Petitioner is referring to witnesses Gracie Rager, JK and JH.  Petitioner raised this ground in his post conviction motion, and the trial court summarily denied the claim finding:

> The Defendant alleges that CPT investigator Gracie Rager gave an inconsistent statement in her deposition, to wit: in her deposition she claimed that she spoke with the victim at a daycare center, however in trial Ms. Rager stated that she spoke with the victim at her school.  <u>Strickland</u> requires that the prejudice from an alleged error be so grievous that but for the error the result of the proceeding would have been different.  Failure to impeach a witness about a minor inconsistency such as whether a meeting took place at a school or a day care center does not rise to the prejudice required by <u>Strickland</u>.

> The Defendant also alleges that J.K. and J.H. gave differing testimony regarding the time frame of the alleged abuse.  Defendant concedes that trial counsel elicited this testimony from the witnesses at trial, but he failed to impeach J.K. and J.H. with the testimony of the other.  As trial counsel elicited the contradictory statements, trial counsel did in fact impeach the witnesses by eliciting contradictory evidence.  See generally *C. Ehrhardt, Florida Evidence § 608.6.*  As the jury was presented with the

> contradictory accounts, there can be no error
> under <u>Strickland</u>.

Ex. T at 483.

The record shows that during her deposition, Ms. Rager testified that she interviewed KDL at a daycare.  Ex. A at 150. Shortly thereafter, Ms. Rager corrected herself and said she actually spoke to KDL at a school after speaking to her younger sister at a daycare.  <u>Id</u>. at 153-54.  Ms. Rager's testimony at trial was consistent with her corrected testimony from the deposition that she interviewed KDL at a school after speaking with KDL's younger sister at a daycare.  Ex. K at 63.  Under these circumstances, counsel's performance was not deficient.  Moreover, there was no resulting prejudice to Petitioner.

The trial record shows that defense counsel cross examined both JK and JH.  The trial court determined that counsel's effective examination of both of these witnesses did in fact impeach their testimony by highlighting contradictory evidence.  Again, counsel's representation did not fall below an objective standard of reasonableness.  Also, there is no reasonable probability that the result of the proceeding would have been different if counsel had undertaken the steps Petitioner asserts he should have undertaken in these circumstances.

The decisions of the state trial and appellate courts are entitled to deference under AEDPA.  The adjudications of the state courts resulted in decisions that involved a reasonable application

of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on grounds thirteen of the Petition, a claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 110-15.

### Ground Fourteen

In his final ground of the Petition, Petitioner claims that he was denied a fair trial due to the cumulative errors of trial counsel. In denying this ground, the trial court held:

> The Defendant alleges that the totality of all the conduct he is attacking in the instant motion, even if the individual claims do not support his Strickland claim, tainted the entire trial. The Court does not find that the conduct of trial counsel was so erroneous as to cast a cloud on the whole of the Defendant's trial. Should the Court later find that trial counsel was ineffective on one of the preceding grounds; [sic] the ruling will be limited to that singular ground and not imputed to the trial as [a] whole.

Ex. T at 484.

After the evidentiary hearing, the trial court denied the remaining individual claims of ineffective assistance of trial counsel. Ex. U at 563-70. The appellate court affirmed the ruling of the trial court in denying the post conviction motion. This

decision is entitled to deference under AEDPA. Therefore, Petitioner is not entitled to relief on ground fourteen of the Petition because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See Response at 116.

In the alternative, this claim is due to be denied. The cumulative deficiencies of counsel claim is without merit.

> As set forth above, [Petitioner] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial. See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied, 531 U.S. 849 (2000). Petitioner is not entitled to relief on the basis of this claim of ineffective assistance of counsel alleging the cumulative errors of counsel. See Response at 116-18. Furthermore, since there were no errors of constitutional dimension, the cumulative effect of any errors would not subject Petitioner to a constitutional violation. See Miller, 200 F.3d at 286 n.6.

## CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted. <u>See</u> Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the

- 49 -

record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.** Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of November, 2013.

ROY B. DALTON, JR.
United States District Judge

– 50 –

sa 11/21
c:
Grady M. Kittrell
Counsel of Record